**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (CINCINNATI)**

| | | |
|---|---|---|
| TERRY TYRONE PULLEN, JR., | : | Case No. 1:20-cv-00050 |
| | : | |
| Plaintiff, | : | District Judge Matthew W. McFarland |
| | : | Magistrate Judge Caroline H. Gentry |
| vs. | : | |
| | : | |
| CORRECTIONS OFFICER TABOR, | : | |
| *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, a former Ohio inmate who is proceeding without the assistance of counsel, filed this civil rights action under 42 U.S.C. § 1983 against several correction officers employed at the Southern Ohio Correctional Facility ("SOCF"). This matter has been referred to the undersigned Magistrate Judge to issue a Report and Recommendation on Defendants' Motion for Summary Judgment (Doc. No. 68.)

After its initial screen of Plaintiff's Complaint, this Court allowed Plaintiff to proceed with his Eighth Amendment claims against Defendants Parish, Tabor and Bigham in their individual capacities based on their alleged use of excessive force. (Report and Recommendation, Doc. No. 6, PageID 196; Order Adopting Report and Recommendation, Doc. No. 10.) The Court also allowed Plaintiff to proceed with his Fourth Amendment claims against Defendants Joseph, Dyer, Bauer, Prater and Fri in their individual capacities based on allegations that they conducted a strip search without

a legitimate penological purpose and/or in a humiliating and unreasonable manner. (*Id.*) The Court dismissed Plaintiff's remaining claims.[1]

For the reasons set forth below, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. No. 68) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned recommends that the Motion for Summary Judgment be **GRANTED** as to Plaintiff's claims against Defendants Joseph, Dyer, Bauer, Prater, Fri, and Parish, and **DENIED** as to Plaintiff's claims against Defendants Tabor and Bigham.

## I.    LEGAL STANDARDS

### A.    Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure permits parties to move for summary judgment on one or more claims or defenses in an action. Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no ***genuine dispute*** as to any ***material fact*** and the movant is entitled to judgment as a matter of law." *Id.* (emphasis added). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if its resolution "might affect the outcome of the suit under the governing law." *Id.*

---

[1] Specifically, this Court dismissed all claims that "seek[] to hold any defendant liable for the use of threats, slurs, or other insults," because governing case law holds that such conduct does not rise to the level of a constitutional violation. (Report and Recommendation, Doc. No. 6, PageID 196-200; Order Adopting Report and Recommendation, Doc. No. 10.) For the same reason, the Court dismissed all claims asserted against Defendants Joseph, Dyer and Bauer for "fail[ing] to take corrective action with respect to the threats/comments." (*Id.*) The Court dismissed all claims relating to alleged retaliation or the grievance process. (*Id.*)  Finally, the Court dismissed all claims against Defendants in their official capacities to the extent that Plaintiff seeks monetary damages. (*Id.*)

If a party asserts that a fact cannot be disputed or, conversely, that it is genuinely disputed, then it must support its assertion with citations to evidentiary materials (e.g., depositions, documents, affidavits, declarations, stipulations, admissions or interrogatory answers). Fed. R. Civ. P. 56(c)(1)(A). The Court may only consider *admissible* evidence, which does not include unsworn statements. Fed. R. Civ. P. 56(c)(2) & (4); *Tenneco Auto. Operating Co. v. Kingdom Auto Parts*, 410 F. App'x 841, 847 (6th Cir. 2010). Notably, a plaintiff's *pro se* status does not exempt him from his burden to respond with admissible evidence. *Viergutz v. Lucent Techs.*, 375 F. App'x 482, 485 (6th Cir. 2010). However, "a prisoner's sworn affidavit, standing alone, may create a genuine dispute of material fact that forecloses summary judgment . . . even if the record lacks corroborating evidence." *Lamb v. Kendrick*, 52 F.4th 286, 296 (6th Cir. 2022); *see also Coopwood v. Wayne Cnty.*, 74 F.4th 416, 423 (6th Cir. 2023) ("[I]f the assertions in [the plaintiff's] sworn affidavit are true, they would at least create a dispute of fact . . . "). The Court is not required, however, to consider portions of affidavits or declarations that constitute inadmissible evidence or conclusions of law. Fed. R. Civ. P. 56(c)(4).

The party moving for summary judgment bears the initial burden of showing the absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The moving party meets this burden when it shows that the lack of evidence supporting an essential element of the non-moving party's case is so significant that "no reasonable jury could find for the nonmoving party." *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 943 (6th Cir. 2022). However, when asserting qualified immunity at the summary-judgment stage, a defendant is relieved of the threshold burden

on that issue, and the plaintiff must instead affirmatively prove that the defendant *is not* subject to qualified immunity. *Fry v. Robinson*, 678 F. App'x 313, 318 (6th Cir. 2017).

If the moving party meets its initial burden, then the non-moving party cannot rest on its pleadings, but instead must point to admissible evidence that creates a genuine issue of material fact on each element of its claims or defenses. *Anderson*, 477 U.S. at 248-50; *Kraft v. United States*, 991 F.2d 292, 296 (6th Cir. 1993). The non-moving party must show that more than "a mere scintilla of evidence" supports each such element. *CareToLive v. FDA*, 631 F.3d 336, 340 (6th Cir. 2011). If the non-moving party does not either properly support its assertions of fact or address the moving party's assertions of fact with admissible evidence, then the Court may consider the moving party's cited evidence to be undisputed. Fed. R. Civ. P. 56(e).

When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court may not make credibility judgments or weigh the evidence. *Alsbaugh v. McConnell*, 643 F.3d 162, 168 (6th Cir. 2011). It also may not substitute its own judgment for that of a jury and decide the case on the merits. *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 527 (6th Cir. 2018). Instead, the Court's role is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury" at all, or whether the case "is so one-sided that the moving party must prevail as a matter of law." *Id.* (internal citations omitted).

Although the Court is only required to consider the materials cited by the parties, it may also consider other evidentiary materials in the record. Fed. R. Civ. P. 56(c)(3).

But the Court "has no duty when deciding a motion for summary judgment to scour the record for evidence that supports a plaintiff's claims." *Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009).

### B.    Qualified Immunity

The doctrine of qualified immunity "shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 58, 664 (2012). The purpose of qualified immunity is to provide governmental officials with the ability "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis v. Scherer*, 468 U.S. 183 (1984). "When properly applied, [it] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotations and citation omitted). Once a defendant has raised the defense of qualified immunity, the plaintiff bears the burden of proving that the defendant is not entitled to this defense. *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6th Cir. 2005).

To decide whether an official is entitled to qualified immunity, the Court must determine whether the alleged conduct violated a constitutional right and, if so, whether that right was clearly established. *Jones v. Clark Cty.*, 959 F.3d 748, 766 (6th Cir. 2020). The Court may consider these questions in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

A constitutional right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle*, 566 U.S. at 664 (internal quotations and citation omitted). Except in rare cases where the violation is obvious, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741. Previous cases need not be fundamentally or materially similar, *Hope v. Pelzer*, 536 U.S. 730, 740 (2002), and a right may be clearly established even if no case is directly on point. *Ashcroft*, 563 U.S. at 741. But clearly established rights must not be defined at a high level of generality. *White v. Pauly*, 580 U.S. 73, 79 (2017) (internal quotations and citations omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotations and citation omitted) (emphasis in original).

Although qualified immunity is an affirmative defense, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Gardenhire v. Schubert*, 205 F.3d 303, 311 (6th Cir. 2000). To shift the burden of proof to the plaintiff, the defendant need only raise a properly supported assertion of qualified immunity—that is, he need only "com[e] forward with facts to suggest that he acted within the scope of his discretionary authority during the incident in question." *Id*. The plaintiff must then point to sufficient admissible evidence to create a genuine issue of material fact as to whether the defendant violated a constitutional right and must also show that the right is clearly established. *McDonald*, 813 F.3d at 812. The Court is required to believe the admissible evidence cited by the plaintiff and draw all justifiable

6

inferences in his favor. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). The Court must

separately consider each defendant's liability and entitlement to qualified immunity.

*Stoudemire v. Michigan Dep't of Corr.*, 705 F.3d 560, 570 (6th Cir. 2013).

## II.    STATEMENT OF FACTS

Defendants supported their Motion for Summary Judgment with manually filed

video footage from SOCF's security cameras, the declarations of Defendants Dyer (Doc.

No. 68, PageID 567-69), Prater (*id*. at PageID 570-72), and Bauer (*id*. at PageID 573-75),

and authenticated SOCF business records (*id*. at PageID 576-603).

In response, Plaintiff filed his own declaration executed under penalty of perjury.

("Plaintiff Decl.," Doc. No. 83, PageID 673-682.) Plaintiff also verified his Complaint

under penalty of perjury and authenticated the exhibits attached thereto. (Complaint, Doc.

No. 5, PageID 142-45 & 153.)

The following facts are taken from these evidentiary submissions. For the sake of

clarity, the Court will separately discuss the evidence relating to each witness.

### A.    Plaintiff Pullen

Plaintiff is asserting Eighth Amendment excessive force claims against

Defendants Parish, Tabor and Bigham. (Plaintiff Decl., Doc. 83, PageID 673.) He claims

to have suffered physical injury, pain and suffering, and mental and emotional distress as

a result of these Defendants' actions. (Complaint, Doc. No. 5, PageID 146-47.)

Plaintiff is also asserting "Fourth Amendment claims for invasion of privacy due

to an unconstitutional strip search, sexual harassment and being video record[ed] by Inst.

Apple phone" against Defendants Dyer, Bauer, Prater and Fri. (Plaintiff Decl., Doc. 83,

PageID 673.) He claims to have suffered mental and emotional distress as a result of these Defendants' actions. (Complaint, Doc. No. 5, PageID 146-47.)

Plaintiff seeks an award of compensatory and punitive damages, as well as declaratory and injunctive relief. (Complaint, Doc. No. 5, PageID 151-52.)

On March 31, 2018, Defendants Tabor, Bigham, Parish and others conducted a search of Plaintiff's cell. (Plaintiff Decl., Doc. No. 83, PageID 674.) Plaintiff states that his cell was searched because two inmates had stabbed a correction officer earlier that week. (*Id*. at PageID 675.) He states that the officers "used a handheld metal detector to scan my buttocks for any hidden weapons." (*Id*. at PageID 674.) Plaintiff disputes Defendants' contention that the search was methodical and states that his legal papers and hygiene items were strewn everywhere. (*Id*.)

After the search was over, Plaintiff felt suicidal and wanted to harm himself. (Plaintiff Decl., Doc. No. 83, PageID 675.) He notified Defendants Tabor and Bigham that he felt suicidal. (*Id*.) Plaintiff states that these Defendants "grabbed me by my handcuffs and shoulders and began to forcefully escort me into" the cell "but Defendants claimed I resisted." (*Id*.) He describes what happened during the incident:

> From the moment I told C/O Tabor and Bigham I felt suicidal[,] force was used on me by forcing me into the cell steel frame before being forcefully escorted into J3 North cell #50. Then while Officer Tabor held onto the handcuffs placed on me he jerked them after Officer Parish told me I will sit in this cell and clean it up or we can take you over to J2 and kick my ass! I told him I wish them inmates had stabbed him instead[,] that [was] when I was sprayed with O/C from the fogger can Officer Parish was carrying.

(*Id*. at PageID 677.) Plaintiff states that the OC spray made him lose his sight, become paranoid, and experience anxiety and physical and mental pain. (*Id*. at PageID 677-78.)

Plaintiff states that when Defendants Tabor and Bigham escorted him to the strip cage, they "squeezed both handcuffs so hard into my wrist cutting into my skin." (Plaintiff Decl., Doc. No. 83, PageID 676-77.) He states that these Defendants also "bent my wrist upwards until my finger tips touched my upper part of my wrist while bending my thumbs in ways not normal causing me to experience blinding pain." (*Id*. at PageID 677.) Plaintiff states that he "was in too much pain to move my hands or touch anything for that matter." (*Id*.) He states that Defendants' actions caused his hands to be swollen and that the handcuffs left cuts in his wrist. (*Id*. at PageID 678.)

Defendants have denied these allegations and submitted photographs of Plaintiff's hands to support their denials. (Doc. No. 68, PageID 544, 601-02.) Plaintiff responds that his hands were more swollen than depicted in the photographs. (Plaintiff Decl., Doc. No. 83, PageID 678.) Plaintiff also states that the submitted photographs are black and white, and that color photographs taken the next day "would clearly show how the handcuffs left cuts in my wrist." (*Id*.) Plaintiff did not submit any such color photographs.

Plaintiff denies Defendants' contention that he "caused a second security issue by refusing to strip-out and remove his hair braids." (Plaintiff Decl., Doc. No. 83, PageID 676-77.) Plaintiff argues that he "explained that removing four hair braids would cause him unwanted pain due to [his] hands being injured." (Complaint, Doc. No. 5, PageID 140.) Plaintiff did, however, ultimately comply with Defendants' instruction to unbraid his hair despite the pain that it caused him. (*Id*.)

Plaintiff describes what happened next during the strip search:

> While the Plaintiff stood nake[d] in J2 South Bullpen stripcage removing his hair braids Officer Prater removed his institutional I-phone and pointed at the Plaintiff and begin recording the Plaintiff nake[d] as he told the Plaintiff to tuck his dick in between his legs that way he'll look just like a bitch! At that time Officer Fry [sic] claimed the Plaintiff had breast and a buttocks like a bitch which all those officers standing in J2 South Bullpen begin laughing. At that time Officer Carver asked Officer Prater was he recording this fucker for good laughs later? Officer Prater claimed he was!

(Complaint, Doc. No. 5, PageID 140.)

In his Declaration, Plaintiff states that Defendant Fri "sexual[ly] harass[ed]" him during the strip search by making sexualized comments. (Plaintiff Decl., Doc. No. 83, PageID 679.) Plaintiff also states that Defendant Prater "took his iPhone out [of] his pocket and held [it] in my direction while I was naked this did claim [sic] he was recording me naked for good laughs later." (*Id*.) Plaintiff does not accuse Defendants Joseph, Dyer, or Bauer of affirmatively committing misconduct during the search, but alleges that they acted unconstitutionally "by failing to take the corrective action to prevent or stop the sexual harassment." (Complaint, Doc. No. 5, PageID 149.)

The SOCF Rules Infraction Board concluded that Plaintiff "did pull away from Officer Parish and did resist the officer." (Disposition of the Rules Infraction Board, Doc. No. 5, PageID 156.) The Board placed Plaintiff in restrictive housing for 20 days "to promote more positive behavior from [him] in the future." (*Id*.) The SOCF Warden affirmed the decision. (Warden's Decision On Appeal, Doc. No. 5, PageID 158.)

Plaintiff submitted a written complaint to Chuck Smith, SOCF Program Administrator and PREA (Prison Rape Elimination Act) Coordinator. (Complaint

Resolution, Doc. No. 5, PageID 159.) In his complaint, Plaintiff alleged that officers made sexual and racist comments both about him and to him during the strip search. (*Id.*) He also complained that Defendant Prater "used his Inst. I-Phone to record/take a photo of me completely naked in stripcage!" (*Id.*) Mr. Smith wrote and signed this response:

> Myself and Institutional Investigator Miller viewed the DVR footage of this incident and did not observe Correction Officer Prater take any pictures of you. Your allegations of inappropriate comments do not constitute a PREA allegation . . . and need to be addressed as inappropriate supervision through the Inspector's Office.

(*Id.*) Defendants did not submit the referenced DVR footage to the Court.

### B.    Security Camera Video

Defendants supported their Motion for Summary Judgment with a video recording that captured the events involving Defendants Parish and Tabor outside of Plaintiff's cell. There is no audio recording. Due to the camera placement, it is not possible to see what happened inside the cell. No video footage was provided for the other events at issue.

At the beginning of the recording, Plaintiff was standing against the wall across from his cell. He was facing the wall and his back was toward a large group of correction officers. Plaintiff was handcuffed with his hands behind his back.

The officers turned Plaintiff around and walked him toward his cell. When they reached it, one or more of the officers apparently shoved Plaintiff against a portion of the cell, which caused his head to bounce back before his body moved inside.

Next, the recording showed an officer standing outside of the cell with his hands and arms pushed through the bars and into the cell. He appeared to be struggling with someone inside the cell, presumably Plaintiff. Due to the number of officers grouped

outside the cell, it is impossible to see the moment when Plaintiff was sprayed with the OC spray. The officers pulled Plaintiff out of the cell and walked him away, with Plaintiff holding his head down.

Plaintiff complains that Defendants failed to produce this video recording to him in discovery. (Plaintiff Decl., Doc. No. 83, PageID 675-80.) As this Court previously noted, however, Defendants' attempt to mail the video to Plaintiff was unsuccessful because he chose to become a fugitive, which made it impossible for him to receive mail. (March 18, 2024 Order, Doc. No. 80.) Because Plaintiff is now in the Montgomery County Jail, the undersigned **DIRECTS** the Clerk of Court to send him a copy of the manually-filed video footage along with a copy of this Report and Recommendation.

### C.    SOCF Business Records Submitted By Defendants

The SOCF business records discussed below were authenticated by Defendant Bauer, East Region Special Operations Commander. (Doc. No. 68, PageID 573-75.)

On March 31, 2018, SOCF staff searched Plaintiff's cell. (Use of Force Summary Report, Doc. No. 68, PageID 578.) The SOCF Shift Supervisor, Lieutenant Kyle Henson, described what happened after the search was concluded:

> As [Plaintiff] approached the cell front []he stopped and stated "I'm not going in that fucking cell." A direct order was given by C/O T. Parish and C/O R. Tabor to enter his cell with which he did not comply. C/O R. Tabor placed [Plaintiff] in his cell. Once in his cell, C/O R. Tabor attempted to remove the handcuffs. At that time [Plaintiff] attempted to pull his hands into the cuff port refusing to give up his handcuffs. C/O Tabor reacted by pulling the inmate's hands out of the hatch. While C/O Tabor had control of

the handcuffs, [Plaintiff] attempted to pull away. C/O Parish reacted by deploying a quick burst of OC[2] (88 grams) to the inmate's facial area.

At that time the door was opened, [Plaintiff] backed out of the cell and was escorted to J2 by C/O Tabor and AC Tech C. Bigham (SRT Member) and placed in the strip cage. [Plaintiff] was ordered to remove his clothing to be strip searched, he refused at first but then complied and removed his clothing. LT B. Dyer ordered [Plaintiff] to un-braid his hair and beard, [Plaintiff] refused to comply with that order. LT Dyer exited the area and gathered a negotiator (C/O W. Prater) and a camera operator (C/O G. Fri). Nurse Lindamood was contacted to get [Plaintiff] approved for OC pepper spray. LT Dyer then returned to the J2 strip cage with the negotiator and camera operator, C/O Prater then began to communicate with [Plaintiff]. C/O Prater was able to gain compliance and [Plaintiff] removed the braids from his hair and finished the strip search. Once the strip search was completed [Plaintiff] stated he was suicidal. Mental Health was called and he was placed on constant watch in J2-41.

(*Id.* at PageID 578-79.)

Plaintiff told the SOCF nurse that his left wrist was "sore" but refused to be examined. (Medical Exam Report, Doc. No. 68, PageID 592.) The nurse stated that Plaintiff appeared agitated but healthy, with even and unlabored breathing. (*Id.*) She saw Plaintiff move his left wrist and observed a full range of motion. (*Id.*) She did not see any signs or symptoms of acute distress. (*Id.*) The nurse concluded that no treatment was needed and advised Plaintiff to follow up with staff as necessary. (*Id.*)

Defendants submitted black and white photographs of Plaintiff's hands. (Doc. No. 68, PageID 544, 601-02.) Although they do not show any obvious injuries, the quality of these photographs is poor.

---

[2] The term "OC" refers to oleoresin capsicum spray, which is commonly known as pepper spray.

### D. Defendant Dyer

Defendant Dyer submitted a declaration executed under penalty of perjury in support of Defendants' Motion ("Dyer Decl.," Doc. No. 68, PageID 567-69.)

Defendant Dyer was a Correction Lieutenant at SOCF when these events transpired. (Dyer Declaration, Doc. No. 68, PageID 567.) He was not present when Plaintiff's cell was searched, but was present during the strip search. (*Id*. at PageID 568.) Defendant Dyer's account of what happened during that search is consistent with the Use of Force Summary Report quoted above. (*Id*.) He explains that Plaintiff "was placed in the J2 strip cage to be strip searched before being placed in the J2 restrictive housing unit within the maximum security prison." (*Id*.) He further explains that SOCF policy required all inmates who are being placed in J2, or are being placed on a mental health watch, to be strip searched. (*Id*.)

### E. Defendant Prater

Defendant Prater submitted a declaration executed under penalty of perjury in support of Defendants' Motion ("Prater Decl.," Doc. No. 68, PageID 570-72.)

Defendant Prater was a Correction Officer at SOCF when these events transpired. (Prater Declaration, Doc. No. 68, PageID 570.) He was not present when Plaintiff's cell was searched, but was present during a portion of the strip search. (*Id*. at PageID 571.) Specifically, he was asked to be a negotiator and de-escalate the situation by persuading Plaintiff comply with the orders of other correction officers. (*Id*.) Because Plaintiff ultimately agreed to comply with those orders, it was unnecessary for Correction Officer Fri to video record the "strip-out procedure" with a handheld video camera. (*Id*.)

Defendant Prater denies as "completely false" the allegation that he pointed his iPhone at Plaintiff and claimed to be recording him. (Prater Declaration, Doc. No. 68, PageID 571.) He states: "At <u>no</u> point did I use my institutional iPhone to take photos or video record [Plaintiff] while he was naked." (*Id*. (emphasis in original).)

### F. Defendant Bauer

Defendant Bauer submitted a declaration executed under penalty of perjury in support of Defendants' Motion ("Bauer Decl.," Doc. No. 68, PageID 573-75.) Defendant Bauer was a Correction Lieutenant at SOCF when these events transpired. (*Id*. at PageID 573.) He states that he was not present during any of the events. (*Id*. at PageID 574.)

### III. ANALYSIS OF PLAINTIFF'S FOURTH AMENDMENT CLAIMS

### A. Applicable Legal Standard

Although prisoners do have some privacy rights under the Fourth Amendment, "these rights are limited by institutional security needs and the prisoner's reduced expectation of privacy." *United States v. Kelton*, 791 F.2d 101, 103 (8th Cir. 1986) (cited by *United States v. Howton*, 260 F. App'x 813, 818 (6th Cir. 2008)). For example, a general policy of conducting strip searches without probable cause does not violate the Fourth Amendment. *Bell v. Wolfish*, 441 U.S. 520 (1979).

Nevertheless, a prisoner search may violate the Fourth Amendment in certain circumstances. For example, the Fourth Amendment may be violated by a prisoner search that is not "'reasonably related to legitimate penological interests.'" *Fugate v. Erdos*, No. 21-04025, 2022 WL 3536295, at *4 (6th Cir. Aug. 18, 2022) (quoting *Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington*, 566 U.S. 318, 326 (2012) (further internal

quotations and citations omitted)). It also may be violated by a prisoner search performed "in an unreasonable manner, in an unreasonable place, or for an unreasonable purpose." *Fugate*, 2022 WL 3536295, at *13 (quoting *Henry v. Hulett*, 969 F.3d 769, 781 (7th Cir 2020) (en banc)). The Court must determine the reasonableness of a prison strip search by "balancing . . . the need for the *particular* search against the invasion of personal rights that the search entails." *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 572 (6th Cir. 2013) (emphasis in original) (quoting *Bell*, 441 U.S. at 559).

### B. Fourth Amendment Claim Against Defendant Fri

Plaintiff alleges that the Defendant Fri made sexually charged and degrading remarks during the strip search. (Doc. No. 5, PageID 148-49.) This Court previously dismissed all of Plaintiff's claims that were based solely upon verbal threats, slurs, and insults because such conduct does not rise to the level of a constitutional violation. (Report and Recommendation, Doc. No. 6, PageID 197-98.) However, a prison strip search may violate the Fourth Amendment if it is performed "in an unreasonable manner." *Fugate*, 2022 WL 3536295, at *13. Therefore, the question before the Court is whether sexually harassing verbal statements made during a strip search, standing alone, can rise to the level of a constitutional violation. Based on the case law, the undersigned concludes that the answer to this question is no.

Courts have identified three situations in which a strip search has been conducted in an unreasonable manner in violation of the Fourth Amendment. The first situation is when the strip search is unnecessarily conducted in front of third persons. *E.g., Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014); *May v. Trancoso*, 412 F. App'x

16

899, 902-03 (7th Cir. 2011). The second situation is when the strip search is conducted by or in front of members of the opposite sex. *E.g., Kent v. Johnson*, 821 F.2d 1220, 1222 (6th Cir. 1987); *Harris v. Miller*, 818 F.3d 49, 60 (2d Cir. 2016); *Byrd v. Maricopa Cnty. Sheriff's Dep't*, 629 F.3d 1135, 1141-43 (9th Cir. 2011). The third situation is when the strip search involves sexualized physical contact or penetration. *E.g., Williams*, 771 F.3d at 952; *Watson v. Sec'y Penn. Dep't of Corr.*, 436 F. App'x 131, 135 (3rd Cir. 2011); *Evans v. Stephens*, 407 F.3d 1272, 1281 (11th Cir. 2005). None of these situations are alleged to be present in this case.

Moreover, the Court did not find any decision in which the court held the Fourth Amendment to be violated solely because of sexualized verbal comments made during a strip search. To the contrary, the Sixth Circuit held in an unpublished decision that a male prison doctor did not violate the Fourth Amendment by making a crude sexual remark when he removed contraband from a female inmate's genital area. *Henning v. Sowders*, No. 93-5126, 1994 U.S. App. LEXIS 4883, *10-11 (6th Cir. Mar. 14, 1994). In that case, the Sixth Circuit panel found that the sexualized remark violated prison policy and "failed to reflect good faith in professionally maintaining safety and discipline." *Id*. at *10. Nevertheless, the panel held that "[m]ere verbal abuse . . . is insufficient to establish a constitutional deprivation under 42 U.S.C. § 1983." *Id*. (citing *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)).[3] And in another decision, the Sixth Circuit held that

---

[3] In apparent *dicta*, the panel also commented that they were "unprepared to say that [the comment] revealed a malicious or sadistic purpose . . . ." *Henning*, 1994 U.S. App. LEXIS 4883, *11. However, a defendant's subjective motivations are typically irrelevant when determining whether his conduct violated the Fourth Amendment. *E.g., U.S. v. Cowan*, 704 F. App'x 519, 524 (6th Cir. 2017) ("Fourth Amendment questions are examined objectively and an officer's subjective motivations are not enough to transform a permissible search into an impermissible one.").

the Fourth Amendment was not violated when a female prison officer laughed at a male prisoner during a strip search. *Roden v. Sowders*, 84 F. App'x 611, 613 (6th Cir. 2003).

Therefore, even if Plaintiff could persuade a jury that his version of the facts is true, his Fourth Amendment claim against Defendant Fri would still fail as a matter of law because verbalized sexual abuse alone is insufficient. In addition, even if a reviewing court were to find that such conduct alone can violate the Fourth Amendment, Defendant Fri would still be entitled to qualified immunity on this claim because Plaintiff did not have a clearly established right to be free of sexual harassment consisting solely of verbal abuse when this incident occurred. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **GRANTED** as to Defendant Fri, and that all claims against him be **DISMISSED WITH PREJUDICE.**

### C.    Fourth Amendment Claim Against Defendant Prater

Plaintiff asserts that Defendant Prater told him that he was taking photos or videos of Plaintiff with his institutional iPhone while Plaintiff was nude. Defendant Prater denies making such a statement to Plaintiff. Defendant Prater further states that he did not take photos or video of Plaintiff with his institutional iPhone during the search. Other than Defendant Prater's alleged statement to Plaintiff, there is no evidence that he actually photographed or videorecorded Plaintiff with his iPhone during the strip search.

Where there are competing affidavits, neither of which is blatantly contradicted by objective evidence, there is necessarily a dispute of fact. *Byrne v. United States*, 498 F. App'x 555, 563 (6th Cir. 2012). Therefore, the Court will assume *arguendo* that there is a factual dispute as to whether Defendant Prater photographed or videotaped Plaintiff.

Nevertheless, even if Plaintiff were to succeed in proving this disputed fact at trial, his claim against Defendant Prater would still fail as a matter of law.

A number of courts that have considered the propriety of videotaping a prison strip search have held that it is entirely permissible to do so. *See Gray v. Gilmore*, No. 18-1414, 2021 U.S. Dist. LEXIS 23254, *2 (W.D. Pa. Feb. 8, 2021) ("As is well established, using a camera to record a strip search in a prison does not, by itself, amount to a constitutional violation.") (collecting cases). Courts have reasoned that the use of a video camera functions as a deterrent to prevent abusive conduct by both prisoners and prison officials during a strip search. *Id*. Notably, a Sixth Circuit panel similarly held (in an unpublished decision) that a strip search of a male prisoner "which was taped by a video camera operated by a female employee" did not violate the U.S. Constitution. *Hubbert v. Myers*, No. 92-1232, 1993 U.S. App. LEXIS 21883, *1 (6th Cir. 1993).

Accordingly, even if Plaintiff could persuade a jury that his version of the facts is true, his Fourth Amendment claim against Defendant Prater would still fail as a matter of law because the act of videotaping a prison strip search does not violate the Constitution. In addition, even if a reviewing court were to find that such conduct can violate the Fourth Amendment, Defendant Prater would still be entitled to qualified immunity on this claim because Plaintiff did not have a clearly established right not to be videotaped during the strip search. Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **GRANTED** as to Defendant Prater, and that all claims against him be **DISMISSED WITH PREJUDICE.**

### E. Fourth Amendment Claims Against Defendants Joseph, Dyer, and Bauer

This Court previously dismissed Plaintiff's claims against Defendants Joseph, Dyer and Bauer based upon their alleged failure to intervene and stop verbal threats and insults made by other Defendants. (Report and Recommendation, Doc. No. 6, PageID 197-98.) Plaintiff has not identified any other conduct by these Defendants that allegedly violates the Fourth Amendment. Therefore, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **GRANTED** as to Defendants Joseph, Dyer and Bauer, and that all claims against them be **DISMISSED WITH PREJUDICE.**

## IV. ANALYSIS OF PLAINTIFF'S EIGHTH AMENDMENT CLAIMS

### A. Applicable Legal Standard

The Eighth Amendment prohibition on cruel and unusual punishment protects inmates from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). However, correction officers do not violate a prisoner's Eighth Amendment rights when they use force "in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (internal quotations and citation omitted). The need to maintain security and discipline may require prison officials to use physical force that would be actionable as an assault under the common law. *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995). "Because prison officials must make their decisions in haste, under pressure, and frequently without the luxury of a second chance, we must

grant them wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Combs v. Wilkinson*, 315 F.3d 548 (6th Cir. 2002).

An Eighth Amendment excessive force claim has both a subjective and an objective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The subjective component of an Eighth Amendment excessive force claim evaluates "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. The Court must consider the need for the use of force; the relationship between that need and the type and amount of the force used; the threat reasonably perceived by the official; and the extent of the injury inflicted. *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *Whitley*, 475 U.S. at 320.

The objective component of an Eighth Amendment excessive force claim requires that a plaintiff's injury or pain be "sufficiently serious" to offend "contemporary standards of decency." *Cordell* 859 F.3d at 580. "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37-38 (2010) (quoting *Hudson*, 503 U.S. at 9-10). Not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. At the same time, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Hudson*, 503 U.S. at 4; *see Wilkins*, 559 U.S. at 38 ("An inmate

who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.").

### B.   Eighth Amendment Claim Against Defendant Parish

Plaintiff asserts an Eighth Amendment claim against Defendant Parish based upon Defendant Parish's use of OC spray. (Complaint, Doc. No. 5, PageID 137.) Plaintiff states that the OC spray made him lose his sight, become paranoid, and experience anxiety and physical and mental pain. (Plaintiff Decl., Doc. No. 83, PageID 677-78.)

These allegations are insufficient to prevail on an Eighth Amendment claim. The Sixth Circuit has held that the use of chemical agents against prisoners does not constitute a *per se* violation of the Eighth Amendment. *Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992). While prison officials may not use pepper spray "maliciously and sadistically . . . to cause harm," they may properly use chemical agents against "recalcitrant prisoners . . . in a good-faith effort to maintain or restore discipline." *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (collecting cases) (internal quotations omitted).

Here, Plaintiff has not pointed to evidence that establishes a genuine issue of material fact with respect to his excessive force claim against Defendant Parish. With regard to the subjective component of Plaintiff's Eighth Amendment claim, Defendants have submitted evidence that Defendant Parish administered the OC spray "to get [Plaintiff] to comply with orders." (Doc. No. 68, PageID 582.) Plaintiff does not deny Defendants' claim that he was resisting the officers. (*See* Plaintiff Decl., Doc. No. 83, PageID 674). Moreover, any claim by Plaintiff that he was not resisting the officers

would be blatantly contradicted by footage that shows an officer physically struggling with Plaintiff after he was placed in his cell. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

At most, construing Plaintiff's allegations liberally, he implies that Defendant Parish sprayed him in response to Plaintiff's statement that he "wish[ed] them inmates had stabbed [Defendant Parish] instead." (Plaintiff Decl., Doc. No. 83, PageID 677.) But the mere fact that Plaintiff insulted Defendants does not support a reasonable inference that Defendant Parish's next action was malicious and sadistic rather than a good-faith attempt to restore order. *See, e.g.*, *McGranahan v. Ky. Dep't of Corr.*, No. 5:18-CV-00037, 2020 WL 4572358, at 5 (W.D. Ky. Aug. 6, 2020) (awarding summary judgment to defendant correction officer where "[the defendant] told [the plaintiff] he was not being compliant . . . [and] did not begin spraying until [the plaintiff] cursed at [the defendant] and said, 'come and get me').

As for the objective component of Plaintiff's claim, the Eighth Amendment is not violated by a *de minimus* use of force that "is not of a sort repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37-38 (internal quotations and citation omitted). Although exposure to OC spray is certainly unpleasant, it typically does not rise above the level of "*de minimis* and temporary discomfort." *Jeter v. Ohio Dep't of Rehab & Corr.*, No. 1:17-CV-00756, 2019 WL 5066851, a*22 (S.D. Ohio Oct. 9, 2019) (Bowman, M.J.). And courts do not consider the use of OC or pepper spray to be inherently repugnant to the conscience of mankind. *Caldwell*, 968 F.2d at 600; *see Hernandez v. Simmons*, No. 19-05344, 2020 U.S. App. LEXIS 29233, at *9 (6th Cir. Sept. 14, 2020) (affirming summary judgment to defendant where plaintiff alleged pepper spray caused damage to his eyes)).

Therefore, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **GRANTED** as to Defendant Parish, and that all claims against him be **DISMISSED WITH PREJUDICE.**

### C.    Eighth Amendment Claims Against Defendants Tabor and Bigham

Plaintiff claims that Defendants Tabor and Bigham injured his hands and wrists while escorting him to the strip cage. Plaintiff asserts that Defendants squeezed the handcuffs until they cut into his wrists, and "bent [his] wrist upwards until [his] fingers touched [the] upper part of [his] wrist while bending [his] thumbs in ways not normal." (Plaintiff Decl., Doc. No. 83, PageID 677.) Plaintiff alleges that Defendants' actions caused him "blinding pain," swelling, and cuts to his wrists. (*Id*. at PageID 677-78.)

Defendants deny using force against Plaintiff and argue that surveillance footage of the incident and photographs of Plaintiff's hands refute his claims of injury. (Doc. No. 68, PageID 544.) However, the video footage submitted by Defendants shows only the initial altercation outside of Plaintiff's cell, and does not show Defendants Tabor and Bigham escorting Plaintiff to the strip cage. The photographs of Plaintiff's hands are of poor quality. And Plaintiff averred that Defendants' actions caused him "blinding pain." As noted, the Court is required to construe all reasonable inferences in favor of Plaintiff, and believe all admissible evidence proffered by him, at the summary judgment stage.

Turning to the subjective component of Plaintiff's Eighth Amendment excessive force claims against Defendants Tabor and Bigham, the undersigned concludes that there is a genuine issue of material fact as to "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Cordell*,

24

759 F.3d at 580. Although there is evidence that Plaintiff resisted officers prior to the administration of the pepper spray, it is unclear whether such resistance continued after the spray was administered and Plaintiff was escorted away from his cell. The type and amount of force used is disputed, as is the extent of Plaintiff's injuries. Therefore, the undersigned concludes that there is a genuine issue of material fact as to the subjective component of Plaintiff's excessive force claims against Defendants Tabor and Bigham.

As for the objective component of Plaintiff's Eighth Amendment excessive force claims against these Defendants, the undersigned also finds that there is a genuine issue of material fact as to whether Plaintiff's injuries and pain were "sufficiently serious" to offend "contemporary standards of decency." *Cordell* 859 F.3d at 580. While the use of handcuffs in prisons is certainly permitted, the type and extent of force alleged here could rise to the level of a constitutional violation. *See Fennell v. Quintela*, 393 F. App'x 150 (5th Cir. 2010) (allegation that prison guard unnecessarily twisted plaintiff's handcuffed wrist, causing an injury, created a jury question with respect to an excessive force claim); *McCoy v. Holguin*, No. 1:15-cv-768, 2023 U.S. Dist. LEXIS 134298, *19 (E.D. Cal. Aug. 1, 2023) ("The abusive use of handcuffs can constitute excessive force in violation of the Eighth Amendment."). There are genuine disputes of material fact regarding how much force was used, why it was used, how much pain it caused, and the extent of Plaintiff's injuries. The Court cannot resolve these disputes on summary judgment.

Defendants Tabor and Bigham argue that Plaintiff's claims against them are barred by the Prison Litigation Reform Act (PLRA), which provides:

> (e) Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18, United States Code).

42 U.S.C. § 1997e(e). The Sixth Circuit has explained that although a plaintiff's physical injury "need not be significant . . . it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010). Because Plaintiff is seeking recovery for mental and emotional distress, Defendants argue these claims fail as a matter of law because Plaintiff's physical injuries were *de minimus*.

Defendants' argument is overbroad. More recently, the Sixth Circuit has held that Section 1997e(e) only bars claims for mental and emotional injury to the extent that such claims seek compensatory damages, and ***not*** to the extent they seek other types of relief:

> At the very least, Small may continue to pursue his action based on the requests for non-compensatory relief. There is widespread agreement among our sister circuits that [Section] 1997e(e) allows prisoners alleging non-physical injury to still pursue claims for nominal damages, as well as injunctive and declaratory relief. Most of our sister circuits also interpret the statute to allow claims for punitive damages. . . . Thus, insofar as Small seeks forms of relief other than compensatory damages, his case may proceed.

*Small v. Brock*, 963 F.3d 539, 543 (6th Cir. 2020) (citations omitted).

In this case, Plaintiff seeks declaratory and injunctive relief, as well as punitive damages. (Complaint, Doc. No. 5, PageID 151-52.) Therefore, even if Defendants Tabor and Bigham succeed in showing that the injuries to Plaintiff's hands and wrists were *de minimus*, Section 1997e(e) would only bar him from recovering compensatory damages

for those injuries. Section 1997e(e) does not bar Plaintiff from seeking other types of relief with respect to his excessive force claims against Defendants Tabor and Bigham.

Finally, turning to Defendants' invocation of the defense of qualified immunity, an inmate has a constitutional right to be free from excessive force under the Eighth Amendment, and that right is clearly established. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Given Plaintiff's sworn statements that Defendants Tabor and Bigham applied excessive force when escorting him from his cell to the strip cage, the undersigned concludes that Defendants Tabor and Bigham are not entitled to qualified immunity at this stage of the proceedings.

Accordingly, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **DENIED** as to Defendants Tabor and Bigham, and that Plaintiff's Eighth Amendment excessive force claims against them proceed to trial.

## III.    CONCLUSION

In sum, for the reasons stated, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **GRANTED** as to Defendants Joseph, Dyer, Bauer, Prater, Fri, and Parish, and that all claims against them be **DISMISSED WITH PREJUDICE.**

The undersigned further **RECOMMENDS** that Defendant's Motion for Summary Judgment (Doc. No. 68) be **DENIED** as to Defendants Tabor and Bigham, and that Plaintiff's Eighth Amendment excessive force claims against them proceed to trial.

The undersigned **DIRECTS** the Clerk of Court to send Plaintiff a copy of the manually-filed video footage along with a copy of this Report and Recommendation.

**IT IS SO RECOMMENDED**.

 */s/ Caroline H. Gentry*
Caroline H. Gentry
United States Magistrate Judge


<u>Procedure on Objections</u>

If any party objects to this Report and Recommendation ("Report"), that party may, within fourteen (14) days of the date that this Report was filed, file and serve written objections to specific findings or recommendations along with supporting authority for the objection(s). Responses to objections are due ten days after objections are filed and replies by the objecting party are due seven days thereafter. A District Judge will then make a *de novo* determination of the portions of the report, findings, or recommendations to which objection is made. The District Judge may accept, reject, or modify, in whole or in part, this Court's findings or recommendations, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are advised that a failure to object to the Report will result in a waiver of a party's right (1) to have the District Judge review the Report *de novo* and (2) to appeal a decision of the District Court adopting the Report. *See Thomas v. Arn*, 474 U.S. 140 (1985); *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).